*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TONY LEVARD WATT,

        Defendant-Appellant.

UNPUBLISHED
June 23, 2022

No. 357085
Genesee Circuit Court
LC No. 14-035085-FC

Before: BOONSTRA, P.J., and GADOLA and HOOD, JJ.

PER CURIAM.

Defendant Tony Levard Watt appeals by delayed leave granted[1] the trial court's denial of his motion for relief from judgment from convictions following a no-contest plea to four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(ii) (sexual penetration with an individual related by blood or affinity), and three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact against an individual less than 13 years of age). The trial court acknowledged that Watt's plea was defective due to the court's failure to advise him that lifetime electronic monitoring was a consequence of his plea. The trial court also acknowledged that Watt's original sentence was defective because of the court's failure to include lifetime electronic monitoring in its judgment and sentence. Nonetheless, the court denied his motion for relief from judgment, finding that Watt failed to demonstrate good cause or prejudice under MCR 6.508(D)(3). For the reasons stated below, we reverse and remand for proceedings consistent with this opinion.

---

[1] *People v Watt*, unpublished order of the Court of Appeals, entered July 23, 2021 (Docket No. 357085).

## I. BACKGROUND

In November 2014, pursuant to a plea agreement, Watt pleaded no contest to four counts of CSC-I and three counts of CSC-II. Originally, Watt was charged with four counts of CSC-I, under MCL 750.520b(1)(b)(ii) (Counts 1, 2, 4, and 6), and three counts of CSC-I, under MCL 750.520b(1)(a) and (2)(b) (sexual penetration by defendant 17 years of age or older against an individual less than 13 years of age) (Counts 3, 5, and 7). Counts 3, 5, and 7 each carried a mandatory, consecutive 25-year sentence. Pursuant to the plea agreement, the prosecution agreed to reduce Counts 3, 5, and 7 to three counts of CSC-II, which carry a 15-year maximum, and cannot run consecutively. The plea agreement contained a sentence agreement of 10 to15 years' imprisonment for Counts 3, 5, and 7, and an agreed minimum sentence of 20 years for Counts 1, 2, 4, and 6. The parties agreed that the trial court would set the maximum sentence for Counts 1, 2, 4, and 6, and that all the sentences would run concurrent to each other. Among other terms, the plea agreement provided that Watt was required to register as a sex offender for life. But the agreement did not state that lifetime electronic monitoring was required.

During the plea hearing the trial court advised Watt of the maximum possible sentences, but it did not advise Watt that lifetime electronic monitoring was a consequence of his plea and sentence. Although the prosecutor stated that lifetime electronic monitoring, among other terms, was required as part of the sentence, the court never stated the penalty and never asked Watt if he understood that it was a consequence of his plea. Neither the prosecutor, nor Watt's counsel, corrected the court. The court accepted Watt's plea as knowingly and voluntarily made.

At the sentencing hearing on December 8, 2014, the trial court also failed to include lifetime electronic monitoring in its pronouncement of sentence. During the hearing, the prosecution argued that the court should impose a maximum sentence of 50 years and added, "as it relates to these offenses, lifetime sex offender registration and electronic monitoring are required." The trial court sentenced Watt to a prison term of 20 to 50 years on Counts 1, 2, 4, and 6, and 15 to 20 years on Counts 3, 5, and 7. The court also stated that if Watt ever achieved parole, "he would be subject to electronic monitoring, uh, requirements."

The original judgment of sentence and commitment reflects the sentence that the court pronounced on the record. Under item 12 for miscellaneous recommendations, the judgment of sentence provided that the counts were to run concurrent with each other and "DEFT TO REGISTER & COMPLY WITH LIFETIME SEX REGISTRATION. DEFT IS TO COMPLY WITH ELECTRONIC MONITORING AS A CONDITION OF PAROLE." The box for item 11, which provides for lifetime monitoring under MCL 750.520n, was left unchecked.

At the sentencing hearing, the court advised Watt of his appellate rights. Watt did not apply for leave to appeal or request appointed appellate counsel, but at the time of sentence, the court had not included lifetime electronic monitoring in his judgment. The appeals period for his original sentence lapsed on January 19, 2015.

In a letter dated March 2, 2015, the Michigan Department of Corrections (MDOC) wrote the sentencing judge to advise that Watt's judgment of sentence and commitment did not include lifetime electronic monitoring as required by MCL 750.520b. MDOC copied Watt on the letter.

On March 2, 2015, the trial court sua sponte entered an amended judgment of sentence.[2] The amended judgment contains the exact same terms and conditions as the original judgment except that the box for item 11, providing lifetime electronic monitoring, is checked. The trial court did not hold a new sentencing hearing. The record does not reflect that the trial court provided notice to either party of its intention to correct the invalid sentence. See MCR 6.429(A) (providing that a court may correct an invalid sentence on its own initiative after giving the parties an opportunity to be heard). Nor does the record reflect that the trial court advised Watt of his appellate rights related to the entry of the amended sentence. Watt did not appeal from his amended judgment of sentence, but it appears that he never received notice of his appellate rights.

In February 2020, Watt moved for relief from judgment, arguing that his plea was not voluntary because he was not informed of the lifetime electronic monitoring requirement. On October 28, 2020, Watt's post-conviction counsel argued that his due process rights were violated when the trial court failed to inform him of the lifetime electronic monitoring requirement. He also argued that defense trial counsel was ineffective. This was his first motion for relief from judgment.

The prosecutor responded that Watt had not shown good cause or actual prejudice. The prosecutor highlighted the difference between the standard for a motion for relief from judgment and a motion to set aside a plea.

The trial court denied the motion, stating its decision on the record. In relevant part, the court stated:

> I am denying the motion for relief from judgment and I do not believe that there is a sufficient basis for the Court to conduct any further hearings, specifically as it relates to the *Ginther*[3] hearing.
>
> In reviewing this case, and it's been pending for some time, and I have reviewed the video of the plea, of the sentencing, I've reviewed the briefs, supplemental briefs, response briefs, cases that have been filed, and I think everyone agrees that, at the time of the plea, Mr. Watt was not advised by the court of the requirement for the lifetime electronic monitoring.
>
> That is not disputed. It was stated by the prosecutor in that matter but not by the Court. And that would be considered a defect with the plea. [Footnote added.]

The trial court stated that Watt failed to satisfy the good cause and prejudice requirements for a motion for relief from judgment. The court found that Watt was "advised at every stage after

---

[2] The amended judgment of sentence was signed by the trial judge on March 2, 2015, but was not filed with the register of actions until March 3, 2015. March 2, 2015 is the same date as the letter from MDOC.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-3-

the plea of the lifetime electronic monitoring, the presentence investigation report, at the time of the sentencing, even the amended judgment of sentence." The court found that this should have been raised in the appropriate appellate time period. Because the motion was not filed until "six years later," the court found that Watt had not met his burden related to good cause. The trial court also found that Watt failed to show actual prejudice. Regarding actual prejudice, the court found the prosecutor's statements were sufficient to obviate the requirement that the trial court advise Watt of the consequence of his plea:

> The second aspect in the 6500 motion of actual prejudice, the defect of the plea. That did not comply with *Cole*[4] and came instead from the prosecutor, not from the court, I do not find [is] so offensive that it would rise to the level that this conviction should not stand. [Footnote added.]

Finally, the court opined that if the issues were raised timely in an appeal, there could have been a different outcome. The court entered an order denying the motion for relief from judgment for the reasons stated on the record.

Watt applied for leave to appeal, which this Court granted. *People v Watt*, unpublished order of the Court of Appeals, entered July 23, 2021 (Docket No. 357085).

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision on a motion for relief from judgment. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes or makes an error of law. *Id*. at 628-629 (citations omitted). A trial court's findings of facts supporting its decision on a motion for relief from judgment are reviewed for clear error. *People v Kasben*, 324 Mich App 1, 7; 919 NW2d 463 (2018). A factual finding is clearly erroneous if it leaves this Court with a firm and definite conviction that a mistake was made. *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011).

## III. DEFECTIVE PLEA HEARING

At the threshold, the Court acknowledges, and the parties do not dispute, that Watt's plea hearing was defective. Sentences for convictions of CSC-I and CSC-II must include lifetime electronic monitoring (LEM). See MCL 750.520b(2)(b) and (d); see also MCL 750.520c(2)(b) (providing lifetime electronic monitoring if the violation involved sexual contact committed by an individual 17 years of age or alder against an individual less than 13 years of age). MCR 6.302(A) requires a trial court conducting a plea hearing to "place the defendant or defendants under oath and personally carry out subrules (B)-(E)." MCR 6.302(B)(2) states what information a trial court must provide regarding defendant's possible sentence, including "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law, including a

---

[4] *People v Cole*, 491 Mich 325; 817 NW2d 497 (2012).

requirement for mandatory lifetime electronic monitoring under MCL 750.520b or 750.520c[.]" During defendant's plea hearing, the trial court informed defendant of the maximum sentences for CSC-I and CSC-II, but did not mention lifetime electronic monitoring.

MCR 6.302(A) provides that a "court may not accept a plea of guilty . . . unless it is convinced that the plea is understanding, voluntary, and accurate." A plea that is not voluntary and understanding because of a defect in the process " 'violates the state and federal Due Process Clauses.' " *People v Blanton*, 317 Mich App 107, 119; 894 NW2d 613 (2016), quoting *People v Brown*, 492 Mich 684, 699; 822 NW2d 208 (2012). A defendant "must be fully aware of the direct consequences of the plea," and the sentence "is the most obvious direct consequence of a conviction." *Blanton*, 317 Mich App at 118 (cleaned up). Accordingly, the trial court's failure in this case to inform defendant that his sentence required lifetime electronic monitoring was a defect in the plea-taking process.

The remedy for a plea proceeding that did not comply with MCR 6.302(B)(2) is to permit the defendant an opportunity to withdraw the plea or let the plea and sentence stand. *Brown*, 492 Mich at 698; see also MCR 6.310(C). Here, however, the original judgment was also defective because it did not include lifetime electronic monitoring. Therefore, Watt could not move to withdraw his plea on this basis, because it was not part of his sentence until the court sua sponte amended its judgment. He also could not apply for leave to appeal on this basis, because the court did not amend the judgment until after the appellate period expired.

## IV. DEFECTIVE AMENDED JUDGMENT

It is undisputed that Watt's original judgment of sentence was invalid for failure to include lifetime electronic monitoring. See *People v Comer*, 500 Mich 278, 283; 901 NW2d 553 (2017). But Watt's amended judgment of sentence was also defective because the trial court attempted to correct the invalid judgment without notifying the parties, holding a hearing, or advising Watt of his appellate rights after entry of the amended judgment. See MCR 6.429(A); see also *People v Scott*, unpublished per curiam opinion of the Court of Appeals, issued April 9, 2019 (Docket No. 343230) (holding that the trial court erred in sua sponte amending defendant's judgment of sentence to impose mandatory lifetime electronic monitoring and that rule allowing for courts to correct clerical mistakes did not apply).[5]

MCR 6.429 provides the trial court with authority to correct an invalid sentence. When the trial court amended Watt's judgment, MCR 6.429(A) provided: "A motion to correct an invalid sentence may be filed by either party. The court may correct an invalid sentence, but may not modify a valid sentence after it has been imposed except as provided by law." See MCR 6.429(A), amend Mar. 12, 2002; see also *Comer*, 500 Mich at 294 (citing the rule prior to 2018 amendments). But, effective September 2018, MCR 6.429(A) was amended to provide that a court may sua sponte correct an invalid sentence within six months of entry of the judgment of sentence. MCR 6.429(A).

---

[5] Unpublished opinions are not precedentially binding, but may be considered for their persuasive value. See *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004).

In *People v Comer*, our Supreme Court addressed whether the trial court's failure to impose mandatory lifetime electronic monitoring for CSC-I conviction renders a sentence invalid and whether a trial court may correct the invalid sentence on its own initiative. *Comer*, 500 Mich at 283. The facts in *Comer* were extremely similar to those in this case. There, the court held that a sentence for CSC-I is invalid if it fails to impose lifetime electronic monitoring. *Id.* at 289, 293 (acknowledging the exception for cases where a defendant is sentenced to life without the possibility of parole under MCL 750.520b(2)(c)). The Court also held, however, that "under MCR 6.435 and MCR 6.429, a trial court may not correct an invalid sentence on its own initiative after entry of the judgment; the court may only do so upon the proper motion of a party." *Id.* at 300. As a result, the Court vacated the defendant's amended judgment of sentence. *Id.* at 283, 300-301.

Here, Watt was convicted of three counts of CSC-II pursuant to MCL 750.520c, but the trial court failed, in the original judgment of sentence, to impose mandatory lifetime electronic monitoring, rendering the sentence invalid. After receiving notice from MDOC that the sentence was invalid, the trial court corrected the error on its own initiative, without a motion from either party or a hearing, despite lacking the authority under *Comer* and the then-existing version of MCR 6.429(A).[6] Compare *Scott*, unpub op at 2-3. Even under the amended version of MCR 6.429, the trial court lacked authority to sua sponte correct an invalid sentence without providing notice to the parties and an opportunity to be heard.

Aside from the trial court lacking authority to modify the original invalid judgment on its own initiative, the amended judgment was defective because the trial court failed to advise Watt of appellate rights that were tied to the amended judgment. This compounded defect is critical in the context of Watt's motion for relief from judgment.

V. MOTION FOR RELIEF FROM JUDGMENT

The trial court abused its discretion in finding that Watt failed to establish good cause or prejudice under MCR 6.508(D). A defendant in a criminal case may move for relief from judgment of conviction and sentence. MCR 6.502(A). Such a motion is governed by MCR 6.500, *et seq.* A defendant has the burden to establish entitlement to relief. MCR 6.508(D). Under MCR 6.508(D)(3), a trial court may not grant a motion for relief from judgment based on a nonjurisdictional error unless the defendant demonstrates good cause for the failure to raise the

---

[6] The failure to include lifetime electronic monitoring cannot be characterized as a clerical error that might be corrected under MCR 2.612(A)(1) (providing in relevant part that "[c]lerical mistakes in judgments . . . and errors arising from oversight or omission may be corrected by the court at any time on its own initiative") for two reasons. First, the *Comer* Court considered and rejected this same argument. See *Comer*, 500 Mich at 293 ("[T]he parties do not contend that the failure to sentence [the] defendant to lifetime electronic monitoring was a clerical mistake. Nor could they—the original sentencing judge said nothing about lifetime electronic monitoring at the initial sentencing.") Second, the sentencing judge did not include lifetime electronic monitoring when it pronounced Watt's sentence; therefore, its omission from the original judgment cannot be characterized as a clerical error.

issue on appeal or in a prior motion, along with actual prejudice. The application of MCR 6.508 "protects [against] unremedied manifest injustice, preserves professional independence, conserves judicial resources, and enhances the finality of judgments." *People v Clark*, 274 Mich App 248, 253; 732 NW2d 605 (2007); see also *People v Reed*, 449 Mich 375, 389; 535 NW2d 496 (1995) (opinion by BOYLE, J.).

## A.  GOOD CAUSE

Watt established good cause for failing to raise these issues on appeal or in a prior motion because the trial court's errors effectively deprived him of an appeal. A defendant may show good cause by "showing that some external factor prevented counsel from previously raising the issue." *Reed*, 449 Mich at 378. "External factors include 'showing that the factual or legal basis for a claim was not reasonably available . . . .'" *Id*. at 385 n 8.

In this case, the trial court's errors were the external factors that prevented Watt or counsel from raising the issues on direct appeal or in a motion to withdraw his plea. At the sentencing hearing the trial court informed defendant of his appellate rights, and defendant's attorney stated that defendant signed and retained a form setting forth those rights, but the record includes no indication that defendant had, or requested, an appellate attorney. Had he requested appellate counsel, they would have no error to appeal, because the trial court's original judgment, like the sentence it pronounced on the record, did not include lifetime electronic monitoring. The trial court did not add lifetime electronic monitoring until after the original appellate window closed. When MDOC notified the court that its original sentence was invalid, the trial court exceeded its authority by sua sponte amending the judgment without a motion from the parties, notice, or a hearing where Watt or counsel could object. More critically, the trial court did not advise Watt of his appellate rights related to the amended sentence. Simply put, Watt could not have raised these issues on appeal because of the defective plea, sentencing hearing, original sentence, and amended sentence.

Watt has established good cause for failure to raise this issue on direct appeal or in an earlier motion for three reasons. First, Watt could not raise this issue on direct appeal because the sentencing court did not include lifetime electronic monitoring in his initial sentence. The court did not include the term when it was pronouncing sentence. The court also did not include it in the judgement of sentence and commitment. The court did not include the provision until it amended the judgment without holding a new sentencing hearing approximately 3½ months after his sentencing hearing. This was well beyond the 42-day period for Watt to request appellate counsel and apply for leave to appeal the defective sentence and plea. Second, when the court sua sponte amended the sentence, it did so without holding a hearing or advising Watt of his appellate rights. As discussed earlier, this prevented Watt or his counsel from objecting. Finally, the amended sentence triggered a new window for an application for leave to appeal. Watt, then incarcerated at the MDOC, would have no way of knowing this because there was no hearing, and the record does not reflect that the court advised him of his appellate rights.

Watt's only opportunity to raise these issues was in a motion for relief from judgment, and he did so in this, his first. We acknowledge that the motion came nearly five years after the amended judgment. In the context of the numerous errors in his plea and sentencing process,

including errors that impacted his right to appellate counsel, we find that this delay should not bar his relief. Had Watt brought his motion on the eve of parole, we might reach a different result. Watt is not a lawyer, or even a free citizen who can access libraries and search engines without restriction. To overlook the myriad errors of the trial court and then find that Watt did not raise the issue in a motion for relief from judgment fast enough would be to hold Watt to a higher standard than we have held the trial court.

The prosecution argues that Watt was effectively made aware of lifetime electronic monitoring through reference to the term in the presentence report, and the prosecutor's statement at the plea colloquy and sentencing hearing. We disagree. The prosecution has cited no authority to suggest that a prosecutor's statements at a plea hearing obviate the court's obligations under MCR 6.302. The prosecution has also not identified an example of this Court allowing such obvious defects in plea hearings or sentencing hearings to stand. We, therefore, conclude that Watt has established good cause under MCR 6.508(D)(3).[7]

## B.  ACTUAL PREJUDICE

Watt also established actual prejudice because the defects in his plea rendered it involuntary. See *People v Cole*, 491 Mich 325, 338; 817 NW2d 497 (2012). According to MCR 6.508(D)(3)(b)(ii), "actual prejudice" exists when "the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand." In *Cole*, the Michigan Supreme Court held that because lifetime electronic monitoring is a direct consequence of a plea, such that the trial court must inform a defendant if lifetime electronic monitoring applies. *Id.* A plea is involuntary where a trial court fails to inform a defendant of lifetime electronic monitoring. *Id.*

In this case, defendant's plea proceeding was defective insofar as the trial court did not expressly inform defendant that lifetime electronic monitoring would be part of his sentencing. Although the prosecuting attorney stated that it would be a part of the sentence, it is unclear if Watt understood this. The Court is unaware of authority that would allow us to rely on constructive notice as obviating the requirements for a plea under MCR 6.302(B)(2) or *Cole*. Here, the trial court never advised Watt that this was a consequence of his plea. It did not do so at the plea colloquy, the sentencing hearing, or in its judgment. The first notice that Watt received from the court was in its sua sponte amended judgment. The defect was such that Watt would have been

---

[7] Defendant attempts to establish good cause by alleging the ineffective assistance of his trial attorney. See *People v Kimble*, 470 Mich 305, 314; 684 NW2d 669 (2004) (noting good cause can be established by proving ineffective assistance of trial counsel); see also *People v Douglas*, 496 Mich 557, 591-593; 852 NW2d 587 (2014) (holding that in the context of a plea offer, mistaken advice from trial counsel regarding the sentence a defendant could receive at trial may constitute deficient performance). Having found that external factors, namely, the previously stated errors of the trial court and defects in his notice of appellate rights, are sufficient to establish good cause, it is unnecessary for us to address this argument.

entitled to withdraw his plea if the other defects had not occurred. For this reason, Watt has established actual prejudice.

Again, the prosecution argues that the prosecuting attorney's statement at the plea hearing that defendant's convictions would require lifetime electronic monitoring, mitigates the other errors in plea, sentencing hearing, sentence, and amended sentence. We disagree. It was not Watt's responsibility as a layman to discern that the prosecution provided additional information regarding his plea. It was also not the prosecutor's responsibility to ensure that his plea was voluntary. Instead, we conclude that Watt has established actual prejudice.

## VI. CONCLUSION

For these reasons, we conclude that the trial court abused its discretion in finding that Watt failed to satisfy the requirements of MCR 6.508(D)(3). We remand for the trial court to appoint new trial counsel and allow Watt an opportunity to withdraw his plea or let the plea and sentence stand. The court should take care to admonish Watt of the potentially grave consequences of withdrawing his plea because the previous offer may not be available in the future.

We reverse and remand. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Noah P. Hood